UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

BRENT BREVARD,                          :

              Petitioner,      :      **<u>MEMORANDUM DECISION</u>**

         - v -                  :      21-cv-4549 (DC) (LB)

SUPERINTENDENT MCCARTHY,                 :

              Respondent.      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPEARANCES:      BRENT BREVARD
                  Petitioner *Pro Se*
                  DIN 16-A-3795
                  Cayuga Correctional Facility
                  P.O. Box 1186
                  Moravia, NY 13118

                  LETITIA JAMES, Esq.
                  Attorney General, State of New York
                  By:    Margaret A. Cieprisz, Esq.
                        Assistant Attorney General
                  28 Liberty Street
                  New York, NY 10005
                      Attorney for Respondent

CHIN, *Circuit Judge*:

        On July 14, 2016, following a jury trial, petitioner Brent Brevard was

convicted in the Supreme Court of New York, Queens County (Griffin, *J.*), of two counts

of first-degree robbery pursuant to N.Y. Penal Law § 160.15[4]. Dkt. 25-22 at 228-30. On

July 28, 2016, the court sentenced Brevard to a total of fifteen years' imprisonment, followed by five years' post-release supervision. Dkt. 25-23 at 16-17. The court also sentenced Brevard to a concurrent sentence of an indeterminate period of incarceration with a minimum of seven-and-a-half years and a maximum of fifteen years for a guilty plea regarding an unrelated forgery charge. *Id.* at 17. Brevard waived his right to appeal the forgery convictions but appealed the robbery conviction. Dkt. 25-23 at 6-8; Dkt. 25-4; Dkt. 25-5.

The Appellate Division, Second Department, unanimously affirmed Brevard's robbery convictions, Dkt. 25-8; *People v. Brevard,* 106 N.Y.S.3d 623 (2d Dep't 2019) ("*Brevard I*"), and the New York Court of Appeals denied his application for leave to appeal, Dkt. 25-10; *People v. Brevard,* 34 N.Y.3d 1015 (2019) ("*Brevard II*"). Brevard filed three motions to vacate his robbery convictions pursuant to N.Y. Crim. Proc. Law § 440.10, all of which were denied. *See* Dkt. 25-13; Dkt. 25-16; Dkt. 25-19.

On September 10, 2021, Brevard filed, *pro se,* a petition for a writ of habeas corpus in this Court pursuant to 28 U.S.C. § 2254. Dkt. 1. On September 26, 2022, Brevard filed an amended petition for a writ of habeas corpus (hereinafter the "Petition"). Dkt. 21. Respondent Letitia James filed her opposition to the Petition on January 5, 2023. Dkt. 24. On September 13, 2024, the case was reassigned to the undersigned.

For the reasons that follow, the Petition is DENIED.

2

## STATEMENT OF THE CASE

### I.    The Facts[1]

The evidence at trial established the following:

On August 31, 2015, at around 11:00 p.m., Ahmed Mohammed responded to an ad on the advertising website, "Backpage." Dkt. 25-6 at 5.  The ad displayed a photo of a woman named "Jessica" who claimed to be interested in engaging in sexual intercourse.  Mohammed called the number from his cell phone and received no response.  Shortly after, he received a text message instructing him to communicate via text instead of telephone.  Mohammed believed that he was communicating with Jessica and understood that he had arranged to have sexual intercourse with her for $100.  Mohammed was instructed to go to Apartment 7B at 65-20 Parsons Boulevard in Queens County to meet Jessica.

Approximately thirty minutes later, Mohammed arrived at the building.  When Mohammed exited the elevator, Brevard attacked him from the back and pointed a black, double-barrel shotgun at him.  *Id.* at 6.  Brevard then told Mohammed to "[s]hut the fuck up," forced him into the stairwell, and ordered him to empty his pockets.  *Id.*

---

[1]    The facts are primarily drawn from the Respondent's brief and supplemental brief and accompanying materials submitted in opposition to Brevard's direct appeal in the Appellate Division in 2016.  *See* Dkt. 25-6; Dkt. 25-7.  The recitation of facts set forth in the state appellate briefs are supported by detailed citations to the record, including the transcript of the trial and subsequent sentencing.  *See, e.g.*, Dkt. 25-6 at 5.

Mohammed turned over his cell phone and $150. Brevard then told Mohammed to "get the fuck out of [there]," and Mohammed fled down the stairs. *Id.*

Two days later, on September 2, 2015, Jeffery Avila responded to the same ad on Backpage and called the same number. *See id.* at 7. Avila communicated with Brevard via text messages and was instructed to meet "Jessica" in Apartment 7A at 65-20 Parsons Boulevard. When Avila exited the elevator, Brevard confronted Avila, pointing a brown-handled, double-barrel shotgun toward Avila and directed him into the stairwell. Brevard told Avila to "[g]et the fuck on the ground, empty out your pockets." *Id.* at 8. Avila took out his cell phone, wallet, and cash, and gave them to Brevard.

Later that day, the police apprehended Brevard inside 65-20 Parsons Boulevard, Apartment 5B. On September 10, 2015, both Mohammed and Avila separately identified Brevard from a lineup at the 107th precinct.[2] After the lineups were conducted, police arrested Brevard and read him his *Miranda* rights. *See* Dkt. 21 at 28-29; Dkt. 24-1 at 60-61.

On June 29, 2016, after the case was sent out for trial, a man called Mohammed's cell phone from jail and left the following voicemail message:

---

[2] On direct examination, Avila first testified that he had identified number four in the lineup. Dkt. 25-22 at 84. Brevard was number two. Dkt. 25-6 at 8 n.3. After the prosecution then showed Avila the lineup photo, Avila testified that he had identified number two. Dkt. 25-22 at 84-85. When asked why his testimony changed, Avila explained he was confused by "similarities in the hats." *Id.* at 85.

4

> This message is for Mohammed Mohammed. Yo listen, I'm a blow your fucking head off. I'm telling you. You keep playing. I'm a come to LaGuardia College, I'm a blow your fucking head off. Don't worry about who this. You don't know me. I watch your house every day. I watch your father, Mohammed Mohammed. Your friend Frank. I know all of y'all. I'm a fucking kill you (Inaudible). Keep playing with me. I'm fucking kill you. I watch your house every day . . . and I know where you work. You do, you do pizza deliveries.

Dkt. 25-6 at 9 (alteration in original). The caller did not identify himself, but Detective Daniel Sjoberj identified the voice as Brevard's. The phone number listed on the Backpage ad belonged to "Vita Maurello" of 65-20 Parsons Boulevard, the apartment building where the robberies occurred. The phone line was a "pay as you go service plan," which did not require the subscriber's identification to open an account. *Id.* at 9-10. The phone records confirmed the calls and text messages between the Backpage phone number and both Mohammed's and Avila's phones on the days of the robberies. *Id.* at 10. Brevard's Rikers Island inmate call log showed that between September 14 and September 22, 2015, Brevard had called the same four phone numbers that the phone in the Backpage ad had called.

## II.    *Procedural History*

### A.    *State Court Proceedings*

#### 1.    *The Indictment and Pre-Trial Proceedings*

On September 24, 2015, a grand jury charged Brevard with two counts of robbery in the first degree. Dkt. 25-15 ¶ 7; Dkt. 25-5 at 4.

On October 9, 2015, Brevard filed an omnibus motion to suppress the identification evidence, claiming that the photo arrays and lineup procedures were unduly suggestive. *See* Dkt. 25-1 at 9-12. Brevard argued, alternatively, that the police lacked probable cause to arrest him, and that his subsequent placement in the lineup was improper. *See id.* at 11. Brevard also moved to suppress any statements made in violation of his *Miranda* rights, *id.* at 6-8, and any prior convictions or bad acts, *id.* at 12. On March 24, 2016, the court denied Brevard's motion to suppress the identification evidence, finding that neither the photo arrays nor the lineups were unduly suggestive and did not address Brevard's other arguments. *See* Dkt. 25-3 at 8-10.

### 2. *The Trial*

Trial began on July 12, 2016. Dkt. 25-22 at 1. The jury heard testimony from the prosecution's witnesses: Mohammed, *id.* at 24; Avila, *id.* at 72; Police Officer Jason Zummo, *id.* at 108; Detective Sjoberj, *id.* at 111; Detective Shawn Johnston, *id.* at 118; Ricardo Leal, a representative from Sprint, *id.* at 143; Kaliope Cothalis, an operations manager at the New York City Criminal Justice Agency, *id.* at 161; and Tarsha Brown, an investigator for the New York City Department of Corrections, *id.* at 165. After the prosecution rested, the defense moved to dismiss all counts, and the trial court denied the motion. *Id.* at 170-71.

The defense called no witnesses but, for the sole purpose of demonstrative evidence, requested permission for Brevard to walk back and forth in front of the jury with his sleeves rolled up to show his arms. *Id.* at 171-73.

On July 13, 2016, the trial court reported that it had held an "informal" charge conference during which the defense asked for an identification charge and a consciousness-of-guilt charge. *Id.* at 134. Defense counsel also stated that Brevard was "debating whether" to allow counsel to ask for an instruction on the lesser offense of third-degree robbery. The next day, Defense counsel notified the court that he was not requesting a third-degree charge at the direction of his client. *Id.* at 138-39. Defense counsel stated he had discussed this at length with Brevard, who was "very, very adamant" that he did not want to seek a third-degree robbery charge. *Id.* at 139. The court asked Brevard directly to confirm he did not want to seek the lesser charge contrary to counsel's advice, and Brevard confirmed that was correct. *Id.* at 139-40.

The defense renewed its motion to dismiss, which the trial court again denied. *Id.* at 171-72. The prosecution did not present a rebuttal case, and summations were given on July 14, 2016. *See id.* at 171-206. That same day, the jury found Brevard guilty of two counts of first-degree robbery. *Id.* at 228-30.

### 3. *Sentencing*

On July 28, 2016, the trial court sentenced Brevard. Dkt. 25-23. The jury had already determined Brevard's guilt in the robbery charges, but for sentencing

7

purposes, Brevard also pled guilty to an unrelated forgery charge for counterfeit $100 bills on the condition that his sentence for the forgery charge run concurrently with any sentence for the robbery convictions. *Id.* at 5-10. Under the terms of the plea deal, Brevard waived his right to appeal the forgery charge. *Id.* at 6-8. For the robbery convictions, the prosecution requested that Brevard be sentenced to twenty years imprisonment plus five years post-release supervision to be run consecutively on each count of robbery in the first degree, *id.* at 14, and Brevard requested leniency, *id.* at 14-15. Brevard stated at his sentencing: "I have been incarcerated trying to make my life better for my family, for my son, and I am just going to do this time and go home to my family and my son and do what I am supposed to do. That's it." *Id.* at 16.

The court sentenced Brevard to (1) fifteen years of incarceration with five years of post-release supervision for the robbery charges and (2) an indeterminate period of incarceration between seven-and-a-half and fifteen years for the forgery charge. *Id.* at 16-17. The court ordered all sentences to run concurrently. The court also sentenced Brevard to five years' post release supervision. *Id.*

### 4. *Direct Appeal*

Brevard, represented by counsel, appealed his robbery convictions to the Appellate Division, Second Department. Dkt. 25-4. On July 9, 2018, the court granted Brevard's application to file a *pro se* supplemental brief, which Brevard subsequently filed. Dkt. 25-5; Dkt. 25-7. Brevard asserted the following claims in both the counseled

and *pro se* briefs: (1) he received ineffective assistance of counsel; (2) police conducted an improper search and seizure; (3) police conducted the lineup without counsel present; (4) the lineup was unduly suggestive; and (5) the court's conduct and rulings deprived him of a fair trial. *See* Dkt. 25-4; Dkt. 25-5.

On September 18, 2019, the Appellate Division affirmed Brevard's robbery convictions. *Brevard I*, 106 N.Y.S.3d at 624. The court concluded that (1) the Supreme Court, Queens County, did not err in declining to suppress identification evidence on the basis that the photo arrays and lineup procedures were unduly suggestive; (2) Brevard had not established that he was deprived of his right to counsel at the lineups; (3) Defense counsel was not ineffective for failing to request a jury instruction explaining that third-degree robbery is a lesser-included offense of first-degree robbery; (4) Brevard received meaningful representation despite Defense counsel's failure to object to the admission of certain evidence or request a limiting instruction regarding that evidence; and (5) the remaining contentions raised in his *pro se* supplemental brief were without merit. *Id.* at 624-25.

On November 29, 2019, the New York Court of Appeals denied Brevard's application for leave to appeal. *Brevard II*, 34 N.Y.3d at 1015.

### 5. *Post-Trial Proceedings*

Brevard filed numerous motions for post-trial and collateral relief, all of which were denied. I summarize Brevard's collateral motions here.

9

On July 12, 2017, Brevard moved *pro se* to vacate the judgment in the robbery case under N.Y. Crim. Proc. Law § 440.10.   Dkt. 25-11.  Brevard argued that the court improperly allowed Avila and Mohammed to make in-court identifications.  *Id.* at 1.  Brevard also raised an ineffective counsel claim because his attorney failed to object to those in-court identifications.  *Id.* at 1-2.  The Supreme Court, Queens County, denied the motion, finding that Brevard should have brought his claims on direct appeal pursuant to N.Y. Crim. Proc. Law § 440.10(2)(b).  Dkt. 25-13.  The court also held that an independent source hearing was unnecessary because the hearing court found that the pre-trial identification procedures were not suggestive.

On or around February 10, 2020, Brevard filed his second N.Y. Crim. Proc. Law § 440.10 motion, alleging that (1) he was denied his Fourth Amendment rights because police arrested him without a warrant and lacked probable cause to conduct a lineup; (2) he was denied his Sixth Amendment right to counsel at the lineup; (3) the court should have suppressed identification evidence obtained without probable cause and before police read him his *Miranda* rights; (4) Defense counsel was ineffective; and (5) the evidence at trial was insufficient to establish his guilt, prove he possessed a firearm, or prove that the firearm was loaded and capable of causing death or serious bodily injury.  *See* Dkt. 25-14.[3]  The court denied the motion, concluding that it was

---

[3]      The record is unclear as to the date on which Brevard filed his second N.Y. Crim. Proc. Law § 440.10 motion.  The motion itself is dated February 10, 2020.  Dkt. 25-14 at 2.  The prosecution's answer

procedurally barred because some of his ineffective counsel claims were decided on the merits in *Brevard I,* and his other claims should have been raised on direct appeal. Dkt. 25-16 at 2-3.

On March 24, 2021, Brevard filed his third and final N.Y. Crim. Proc. Law § 440.10 motion on the grounds that (1) the trial prosecutor withheld material exculpatory evidence and (2) Defense counsel was ineffective for failing to investigate and interview relevant witnesses. *See* Dkt. 25-17.[4] Brevard also requested the appointment of counsel. *Id.* at 3.

On August 24, 2021, the trial court denied the motion because the ineffective counsel claims were decided on the merits in *Brevard I* and Brevard's other claims should have been raised on direct appeal. Dkt. 25-19 at 2-3. The court also determined that Brevard's claim regarding withheld evidence was "conclusively refuted by unquestionable documentary proof," showing that the prosecution had turned over the material to Defense counsel. *Id.* at 3-4. The court also denied Brevard's request for the appointment of counsel. *Id.* at 4.

---

states the motion was filed on February 7, 2020, Dkt. 24-1 at 14, which is the date it was notarized, Dkt. 25-14 at 16, 61. The court's decision denying the motion indicates it was dated April 7, 2020, likely in reference to a date written on the corner of the motion's first page without context. Dkt. 25-16 at 1; *see* Dkt. 25-14 at 1.

[4]     The record is also unclear as to the date on which Brevard filed his third N.Y. Crim. Proc. Law § 440.10 motion. The motion itself is dated and notarized on March 24, 2021. Dkt. 25-17 at 31. The prosecution's answer states the motion was filed on March 24, 2021. Dkt. 25-18 at 1. The court's decision denying the motion indicates it was dated April 12, 2020. Dkt. 25-19 at 1.

### B.    *Proceedings in This Court*

On September 10, 2021, proceeding *pro se*, Brevard filed his initial habeas corpus petition, asserting that (1) he was subject to an illegal search and seizure; (2) the police lacked probable cause to place Brevard's photo in a photo array; (3) Defense counsel was ineffective for failing to object to the admission of Brevard's Rikers Island call log or seek a limiting instruction regarding that evidence; (4) Defense counsel was ineffective for allowing Brevard to decide whether to request a jury instruction on the lesser-included offense; and (5) he was denied his right to counsel during his lineup and stationhouse interrogation. *See* Dkt. 1.

On October 18, 2021, Brevard moved to amend his habeas petition to add four grounds that were argued in his previous section 440.10 motions. Dkt. 7. On November 22, 2021, Brevard moved to amend again to add additional arguments as to two grounds. Dkt. 11. Respondent did not object to either request. Dkt. 12.

On November 29, 2021, Brevard filed a motion for discovery for his Fourth Amendment claims. Dkt. 14. On September 26, 2022, Brevard filed the Petition asserting the same previous claims, along with the following: (6) the evidence was insufficient to prove that the shotgun was a loaded weapon "readily capable of producing death or other serious injury" or that Brevard possessed a weapon; (7) it was reversible error to bolster complainants' testimony of previous identification with a detective's testimony that he saw and heard complainants identify Brevard; (8) the

lineup was unnecessarily suggestive because one complainant had an opportunity to see Brevard in the holding cell before viewing the lineup; (9) the prosecution failed to establish Brevard was read and waived his *Miranda* rights before he was held in custody; and (10) Defense counsel was ineffective for failing to investigate and cross-examine the arresting police officer. *See* Dkt. 21.

On January 5, 2023, the New York State Attorney General's Office filed its opposition to the Petition. Dkt. 24. On January 31, 2023, Brevard filed a reply. Dkt. 27.

On April 9, 2024, Brevard filed a motion for reconsideration of bail pending the court's decision on the Petition. Dkt. 32; Dkt. 33. The court (Komitee, J.) denied the motion for bail on April 17, 2024, finding that the Petition did not raise the substantial claims and extraordinary circumstances necessary to meet the "exacting standard" required for a court to grant bail pending habeas litigation. *See* Min. Order, Apr. 17, 2024 (denying bail motion).

On September 13, 2024, the case was reassigned to the undersigned.

## DISCUSSION

### I.  *Federal Review of State Convictions*

A federal court may not grant a habeas petition on a claim that was adjudicated on the merits in state court unless that adjudication

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

13

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see Harrington v. Richter*, 562 U.S. 86, 97-98 (2011); *Waiters v. Lee*, 857

F.3d 466, 477 (2d Cir. 2017).  Hence, when a claim is adjudicated on the merits, the state

court's decision must be accorded "substantial deference."  *Fischer v. Smith*, 780 F.3d 556,

560 (2d Cir. 2015).  "A federal court may reverse a state court ruling only where it was

'so lacking in justification that there was . . . [no] possibility for fairminded

disagreement.'"  *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (per curiam) (alterations

in original) (quoting *Harrington*, 562 U.S. at 103); *see also Wetzel v. Lambert*, 565 U.S. 520,

524 (2012) (per curiam).

## II.    *Analysis*

In the Petition, Brevard seeks habeas relief on ten grounds, alleging

various Fourth Amendment claims; ineffective assistance of counsel; violation of his

right to counsel; legal insufficiency of evidence; state law evidentiary errors; unduly

suggestive lineup; and *Miranda* violations.  Dkt. 21 at 2-3.  I address each claim in turn.

### A.    *The Fourth Amendment Claims*

"[W]here the State has provided an opportunity for full and fair litigation

of a Fourth Amendment claim, the Constitution does not require that a state prisoner be

granted federal habeas corpus relief on the ground that evidence obtained in an

unconstitutional search or seizure was introduced at his trial."  *Stone v. Powell*, 428 U.S.

14

465, 482 (1976).  Accordingly, "a habeas petitioner's Fourth Amendment claims

previously litigated in state court are usually barred from federal review." *Hemphill v.*

*Senkowski*, No. 02 CIV. 7093(DC), 2004 WL 943567, at *7 (S.D.N.Y. May 3, 2004).

A petitioner may obtain habeas relief arising from Fourth Amendment

claims only if he establishes either that "'the state has provided no corrective procedures

at all to redress the alleged [F]ourth [A]mendment violations,' or, 'if the state has

provided a corrective mechanism,' that the petitioner 'was precluded from using that

mechanism because of an unconscionable breakdown in the underlying process.'"

*Ethridge v. Bell*, 49 F.4th 674, 684 (2d Cir. 2022) (quoting *Capellan v. Riley*, 975 F.2d 67, 70

(2d Cir. 1992)).  To establish such a breakdown, the petitioner would have to prove that

"the state system 'failed to conduct a reasoned method of inquiry into relevant questions

of fact and law.'" *Hicks v. Bellnier*, 43 F. Supp. 3d 214, 231 (E.D.N.Y. 2014) (quoting

*Capellan*, 975 F.2d at 71).

Here, Brevard claims his Fourth Amendment right to be free from

unreasonable searches and seizures was violated on two grounds.  First, Brevard claims

that law enforcement searched his brother's apartment without a search warrant, seized

Brevard without an arrest warrant, and "handcuffed and transported [him] to the 107th

precinct against his will" before he was arrested.  Dkt. 21 at 9.  Second, Brevard argues

that law enforcement lacked probable cause to place his photograph the photo array.

*See id.* at 12-13.  The prosecution argues that probable cause is not required to place a suspect's photograph in an array.  Dkt. 24-1 at 21.

Federal review of Brevard's Fourth Amendment claims is not available. "'[F]ederal courts have approved New York's procedure for litigating Fourth Amendment claims,' embodied in sections 710.20 to 710.70 of New York's Criminal Procedural Law" as being facially adequate.  *Id.* at 18 (quoting *Capellan,* 975 F.2d at 70 n.1).  Brevard has not proven that "the state has provided no corrective procedures at all to redress the alleged fourth amendment violations."  *See Capellan,* 975 F.2d at 70. Therefore, because New York has provided a "corrective mechanism," Brevard may only obtain habeas relief if he can establish that he was "precluded from using that mechanism because of an unconscionable breakdown in the underlying process." *Ethridge,* 49 F.4th at 684 (citing *Capellan,* 975 F.2d at 70).

Brevard's first Fourth Amendment claim regarding improper search and seizure is not subject to habeas review.  Brevard cannot establish an unconscionable breakdown because the trial court and the Appellate Division did not "fail[] to conduct a reasoned method of inquiry into relevant questions of fact and law."  *Hicks,* 43 F. Supp. 3d at 231 (quoting *Capellan,* 975 F.2d at 71).  Brevard also "had the opportunity to extensively litigate his Fourth Amendment claims" and "merely disagrees with the outcome of a state court ruling, which is not the equivalent of an unconscionable breakdown in the state's corrective process." *Fuertes v. Gerbing,* No. 19-CV-03401 (DC),

16

2023 WL 4420118, at *8 (E.D.N.Y. 2023) (alterations adopted) (quoting *Capellan*, 975 F.2d at 72). Brevard raised this illegal search and seizure claim in his motion to suppress, *see* Dkt. 25-1 at 7-8, and again on direct appeal, *see* Dkt. 25-5 at 33, 48-49. The Appellate Division considered and rejected these claims (albeit without discussion) when it held that the claims in Brevard's supplemental brief were meritless. *See Brevard I*, 106 N.Y.S.3d at 625.

Similarly, Brevard had a "full and fair" opportunity to litigate his second Fourth Amendment claim that law enforcement lacked probable cause to obtain identification evidence. *See Capellan*, 975 F.2d at 70. He argued this claim in his motion to suppress, *see* Dkt. 25-1 at 9-12, and again on direct appeal, *see* Dkt. 25-5 at 48-54. The trial court rejected Brevard's claim and denied his motion to suppress. *See* Dkt. 25-3 at 8-10. The Appellate Division again considered and rejected the claim when it found that Brevard's claims in his supplemental brief were meritless, and the lineup was permissible. *See Brevard I*, 106 N.Y.S.3d at 624. Because the Appellate Division rejected this claim on the merits, the state court's decision is entitled to deference.

> [O]nce it is established that a petitioner has had an opportunity to litigate his or her Fourth Amendment claim (whether or not he or she took advantage of the state's procedure), the court's denial of the claim is a conclusive determination that the claim will never present a valid basis for federal habeas relief.

*Graham v. Costello*, 299 F.3d 129, 134 (2d Cir. 2002).

Because there was no failure here "to conduct a reasoned method of inquiry into relevant questions of fact and law," *Hicks*, 43 F. Supp. 3d at 231 (quoting *Capellan*, 975 F.2d at 71), Brevard's "mere disagreement with the outcome of [the] state court ruling is not the equivalent of an unconscionable breakdown," *Capellan*, 975 F.2d at 72. And even if the claim were not procedurally barred, it also fails on its merits. "[T]here is no requirement that probable cause, or any other legal threshold, be met to place a suspect's photograph in an array." *Crews v. Cnty. of Nassau*, 996 F. Supp. 2d 186, 204 n.11 (E.D.N.Y. 2014).

Brevard is therefore not entitled to relief on these claims.

**B.    *The Ineffective Assistance of Counsel Claims***

Brevard brings four sets of claims for ineffective assistance of counsel. First, Brevard argues that his trial lawyer rendered ineffective assistance by failing to object to or seek a limiting instruction regarding the admission of Brevard's Rikers Island call log, which Brevard contends was highly prejudicial evidence in that it revealed his pre-trial incarceration. *See* Dkt. 21 at 14-16. Second, Brevard contends that his trial lawyer improperly allowed Brevard to decide whether to request a lesser-included charge of third-degree robbery, thereby abdicating a counsel's duty to make a strategic legal decision. *See id.* at 17-19. Third, Brevard argues that his right to effective assistance of counsel was violated because his trial lawyer failed to investigate certain

18

possible defenses.[5] Lastly, Brevard argues that this trial lawyer was ineffective for failing to cross-examine Brevard's arresting officer and object to the admission of identification evidence at the suppression hearing. *See id.* at 30-31. These challenges are meritless, and habeas relief is unavailable, for the reasons stated below.

In general, to prevail on a claim of ineffective assistance of counsel, a petitioner must (1) show that counsel's performance was so deficient as to fall below an "objective standard of reasonableness," and (2) establish prejudice by demonstrating "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington,* 466 U.S. 668, 688, 694 (1984). It is not enough for petitioner "to show that the errors had some conceivable effect on the outcome of the proceeding." *Harrington,* 562 U.S. at 104 (quoting *Strickland,* 466 U.S. at 693). Rather, he must establish that counsel's errors were "so serious as to deprive the [petitioner] of a fair trial, a trial whose result is reliable." *Id.* (quoting *Strickland,* 466 U.S. at 687).

In the context of a habeas petition under § 2254(d), "[e]stablishing that a state court's application of *Strickland* was unreasonable . . . is all the more difficult. The standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Harrington,* 562 U.S. at 105 (citations

---

[5]    Specifically, Brevard contends that his appellate lawyer should have returned to the crime scene to investigate the robbery and identify potential witnesses who might offer a different perspective on the prosecution's account of events. *Id.* at 30.

omitted) (first quoting *Strickland,* 466 U.S. at 689; then citing *Lindh v. Murphy,* 521 U.S. 320, 333 n.7 (1997); and then quoting *Knowles v. Mirzayance,* 556 U.S. 111, 123 (2009)). Therefore, "[t]he operative question" when a federal court reviews a state court's ineffective assistance of counsel ruling is "not whether [the] federal court believes the state court's determination was incorrect, but rather whether that determination was objectively unreasonable." *Waiters,* 857 F.3d at 478 (alterations adopted) (quoting *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007)).

The standard for establishing an ineffective assistance of counsel claim under New York law is lower than under federal law. *See People v. Honghirun,* 29 N.Y.3d 284, 289 (2017). In New York, a defendant must show only "that counsel failed to provide meaningful representation." *People v. Alvarez,* 33 N.Y.3d 286, 289 (2019) (citing *People v. Stultz,* 2 N.Y.3d 277, 284 (2004); *and People v. Baldi,* 54 N.Y.2d 137, 147 (1981)). Unlike the federal standard in *Strickland,* under the state standard, the defendant is not required to demonstrate that he was prejudiced by the ineffective assistance. *See Alvarez,* 33 N.Y.3d at 293.

### 1. *Failure to Object to the Rikers Island Call Log*

Brevard fails to meet his burden of proving that trial counsel was ineffective for failing to object to the admission of Brevard's Rikers Island call log. Brevard contends, as he did in his counseled appellate brief, that the call log was highly prejudicial, minimally probative, and largely cumulative. *See* Dkt. 25-4 at 13-14. But the

Appellate Division properly rejected the claim on its merits, concluding that "the

defendant received meaningful representation despite counsel's failure to object to the

admission of the defendant's inmate call log into evidence or to request a limiting

instruction." *Brevard I*, 106 N.Y.S.3d at 624. This determination is entitled to

"substantial deference," *Fischer*, 780 F.3d at 560, and will not be overturned by a federal

court conducting habeas review unless the petitioner can establish that the state court's

conclusion was "unreasonable," 28 U.S.C. § 2254(d). Brevard has not done so here.

       The entirety of the defense theory was that the prosecution misidentified

the perpetrator of these crimes. The Rikers Island call log was highly probative because

it made it more likely that Brevard was the perpetrator of the crimes. And the

prejudicial value of this evidence -- the fact that Brevard was incarcerated in the past --

was unlikely by itself to lead the jury to conclude that Brevard was guilty. In other

words, Brevard has shown no likelihood that the jury convicted him because it learned

that he had been incarcerated at some point after his arrest. Moreover, although

Brevard's counsel failed to request a limiting instruction, Brevard fails to demonstrate

that, but for those errors, the result of his trial would have been different. *See*

*Strickland*, 466 U.S. at 694; *Brevard I*, 106 N.Y.S.3d at 624. Even without the call log, the

prosecution established Brevard's identity through various other means, including

identification by both victims, Brevard's cell phone records, and the voicemail that

Brevard left one of the victims threatening to hurt him. Brevard's claims are based on

trial counsel's strategic choices that are "virtually unchallengeable" before this Court. *Strickland*, 466 U.S. at 690.

### 2. *Allowing Brevard to Decide Whether to Request Lesser Charge*

Brevard argues that he received ineffective counsel because his attorney improperly allowed Brevard to decide whether to request a lesser-included charge of third-degree robbery, thereby abdicating a counsel's duty to make a strategic legal decision. Dkt. 21 at 17-19. Brevard raised this claim in his counseled brief on direct appeal. Dkt. 25-4 at 18-23. The Appellate Division rejected this claim on its merits, finding "no reasonable view of the evidence under which the jury could have found that the defendant committed the lesser offense but not the greater." *Brevard I*, 106 N.Y.S.3d at 624 (first citing N.Y. Crim. Proc. Law § 300.50[1]; and then *People v. Mitchell*, 874 N.Y.S.2d 226, 228 (2d Dep't 2009)).

Brevard's lawyer did not render ineffective assistance of counsel by (1) deferring to Brevard's decision not to request the lesser charge of third-degree robbery or (2) failing to object to the court's deference to Brevard's wishes. Third-degree robbery entails an unarmed robbery, whereas first-degree robbery occurs when the perpetrator "displays what appears to be a . . . firearm." N.Y. Penal. Law §§ 160.05, 160.15(4). Under N.Y. Crim. Proc. Law § 300.50(1), the trial court "may . . . submit in the alternative any lesser included offense if there is a reasonable view of the evidence which would support a finding that the defendant committed such lesser offense but

22

did not commit the greater." N.Y. Crim. Proc. Law § 300.50(1). To have been entitled to the lesser included charge of third-degree robbery, Brevard would have to have demonstrated that there was a reasonable view of the evidence under which he forcibly stole property without displaying what appeared to be a firearm.

Here, a jury could not reasonably have concluded that Brevard committed third-degree robbery because the evidence indicated the robber displayed a firearm. Both victims testified that the robber displayed a double-barreled shotgun, about three-and-a-half feet long. *See* Dkt. 25-22 at 29-32, 79, 94. Notably, "eyewitness testimony may be sufficient for the government to meet its burden of proof [that a defendant had a firearm] so long as it provides a rational basis for the [fact-finder] to find that the object observed by eyewitnesses was, in fact, a firearm." *United States v. Johnson*, 378 F.3d 230, 242 (2d Cir. 2004) (alterations in original) (quoting *United States v. Jones*, 16 F.3d 487, 490 (2d Cir. 1994)). Because no reasonable view of the evidence supported the lesser charge, Brevard's claim of ineffective assistance provides no basis for habeas review.[6] Moreover, the availability of the lesser charge as an option would have arguably increased the chances of a conviction, as third-degree burglary would have been easier for the jury to find. This strategic decision is not a proper basis for an ineffective assistance claim.

---

[6]    Brevard's argument that he was entitled to a jury instruction on the lesser-included offense of third-degree robbery should also be rejected for these reasons. *See* Dkt. 21-23.

### 3. *Failure to Investigate Aspects of the Defense*

Brevard argues his right to effective assistance of counsel was violated because Defense counsel failed to properly investigate aspects of the defense. *See* Dkt. 21 at 30-31. Brevard raised these claims in his *pro se* supplemental brief on direct appeal. *See* Dkt. 25-5 at 42. The Appellate Division considered and rejected these claims, holding that Brevard "was not deprived of the effective assistance of counsel during the [suppression] hearing and trial." *Brevard I*, 106 N.Y.S.3d at 624. These claims have not been properly exhausted and warrant no basis for habeas review.

Brevard has not "exhausted the remedies available in the courts of the State," as is necessary to obtain habeas review in federal court. 28 U.S.C. § 2254(b)(1)(A); *see O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). To exhaust available state remedies, a petitioner "must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (first citing *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995), and then *O'Sullivan*, 526 U.S. at 845). To satisfy the exhaustion requirement, a petitioner must inform the state's highest court that may hear the claim of the alleged constitutional violation and the factual and legal support for the claim. *See Grey v. Hoke*, 933 F.2d 117, 119 (2d Cir. 1991). Brevard raised his ineffective assistance of counsel claim for failure to investigate and locate potential witnesses in his second and third N.Y. Crim. Proc. Law § 440.10

24

motions, but he did not seek leave to appeal the denial of those motions. *See* Dkt. 25-14 at 33; Dkt. 25-17 at 3. Accordingly, these claims provide no basis for habeas review because they remain unexhausted in state court.[7]

And even if some of Brevard's claims were exhausted, all of his ineffective assistance of counsel claims fail on the merits. "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Brevard argues in claims one, two, and four that trial counsel failed to properly investigate aspects of the defense. But, "[w]here the claimed deficiency of counsel stems from the failure to investigate, the lenient standard in *Strickland* of according counsel 'wide latitude . . . in making tactical decisions' also applies." *McDay v. Napoli*, No. 09-CV-0454 (KAM)(MDG), 2013 WL 6231151, at *20 (E.D.N.Y. Dec. 2, 2013) (alteration in original) (quoting *Cullen v. Pinholster*, 563 U.S. 170, 195 (2011)).

Brevard alleges generally that Defense counsel "could have located potential witnesses who could have shed a different light on the people's version of events," Dkt. 21 at 30, but Brevard provides no evidence that other witnesses were

---

[7]    Brevard appeals his ineffective assistance of counsel claim for failure to conduct any investigation regarding his allegedly illegal arrest, which was raised in his second N.Y. Crim. Proc. Law § 440.10 motion. *See* Dkt. 21 at 31; Dkt. 25-14 at 33. However, the state court held that the claim was barred from review under N.Y. Crim. Proc. Law § 440.10(3)(c), which allows a court to deny a N.Y. Crim Proc. Law § 440.10 claim when the defendant previously filed a N.Y. Crim. Proc. Law § 440.10 motion but failed to raise a specific ground, despite being in a position to do so. *See* Dkt. 25-16 at 3; *Murden v. Artuz*, 497 F.3d 178, 192 (2d Cir. 2007) (finding that N.Y. Crim. Proc. Law § 440.10(3)(c) "constitutes an adequate state procedural bar to federal habeas review").

present during the robberies, let alone that such witnesses could have provided favorable testimony for him. And "an attorney is permitted under *Strickland* 'to make a reasonable decision' whether a particular investigation is necessary and 'need not pursue an investigation that would be fruitless, much less one that might be harmful to the defense.'" *McDay*, 2013 WL 6231151, at *20 (quoting *Harrington*, 562 U.S. at 108). Accordingly, the Appellate Division reasonably rejected Brevard's ineffective assistance of counsel claim for failure to investigate aspects of the defense because "[f]ailure to make a meritless argument does not amount to ineffective assistance." *United States v. Regalado*, 518 F.3d 143, 149 n.3 (2d Cir. 2008) (per curiam) (alteration in original) (quoting *United States v. Arena*, 180 F.3d 380, 396 (2d Cir. 1999)).

### 4. *Failure to Cross-Examine Arresting Officer and Object to Admission of Identification Evidence*

The Appellate Division also reasonably rejected Brevard's ineffective assistance of counsel claim for failure to object to the admission of identification evidence at the suppression hearing and cross-examine the arresting officer because the identification evidence was not the product of unlawful police activity. The police may not "mak[e] a warrantless and nonconsensual entry into a suspect's home in order to make a routine felony arrest," *Payton v. New York*, 445 U.S. 573, 576 (1980), without "exigent circumstances," *Kirk v. Louisiana*, 536 U.S. 635, 638 (2002) (per curiam). But the New York Court of Appeals has held that lineup identification evidence "procured after

26

the police le[ft] the arrestee's residence is not . . . 'the product of' a *Payton* violation" but is instead the product of law enforcement's probable cause based on photo array identifications. *People v. Jones,* 2 N.Y.3d 235, 240, 243-44 (2004) ("Due to the lack of a causal relationship between the *Payton* violation and the lineup identifications in this case, the lineups were not the 'fruit of the poisonous tree.'"). Likewise, here, the lineup identifications occurred *after* the police left Brevard's brother's apartment and were the product of probable cause based on photo array identifications. *See* Dkt. 25-3 at 2-5.

Defense counsel was also not ineffective for failing to cross-examine the arresting officer because "[f]ailure to make a meritless argument does not amount to ineffective assistance." *Regalado,* 518 F.3d at 149 n.3 (quoting *Arena,* 180 F.3d at 396). The legality of Brevard's arrest was irrelevant to any issues at trial and would have likely garnered an objection that would have been sustained. Counsel was not ineffective for not pursuing an irrelevant line of questioning.

Overall, Brevard failed to show that his trial counsel's performance fell below an objective standard of reasonableness, and he has failed to show that the state court's determination to that effect was objectively unreasonable. To the extent Brevard must show prejudice under federal law, he has failed to do so. Therefore, none of Brevard's claims of ineffective assistance provide a basis for habeas review.

C.    *The Right to Counsel Claim*

Brevard argues he was denied his Sixth Amendment right to counsel because he was subject to a pre-trial identification lineup without counsel present, despite his request for counsel. *See* Dkt. 21 at 20-21. Brevard raised this claim in his *pro se* supplemental brief on direct appeal. *See* Dkt. 25-5 at 36, 54. The Appellate Division rejected Brevard's right to counsel claim, holding that "the defendant has not established that he was deprived of the right to counsel at the lineups." *Brevard I,* 106 N.Y.S.3d at 624 (first citing *People v. Hawkins,* 55 N.Y.2d 474 (1982); and then *People v. Reyes,* 875 N.Y.S.2d 229, 231-32 (2d Dep't 2009)). Brevard has failed to demonstrate that the Appellate Division's denial of his right to counsel claim was unreasonable.

The Sixth Amendment right to counsel attaches only after the initiation of adversary judicial proceedings, "whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Kirby v. Illinois*, 406 U.S. 682, 689 (1972); *see also Leslie v. Artuz*, 230 F.3d 25, 32 (2d Cir. 2000). Federal courts look to state criminal procedural law to determine when a state criminal action is commenced. *See Meadows v. Kuhlmann*, 812 F.2d 72, 77 (2d Cir. 1987). In New York, criminal proceedings are commenced with the filing of "an accusatory instrument," such as a felony complaint. *See* N.Y. Crim. Proc. Law § 100.05. New York courts have also held that the right to counsel attaches upon arraignment or the issuance of an arrest warrant. *See Gonzalez v.*

28

*Sullivan*, No. CV-88-1459, 1990 WL 126189, at *2 (E.D.N.Y. Aug. 30, 1990) (citing cases), *aff'd*, 934 F.2d 419 (2d Cir. 1991).

At the time of the lineup, Brevard's Sixth Amendment right to counsel had not yet attached because charges had not been brought against him. *See Kirby*, 406 U.S. at 688-89; *see also Rothgery v. Gillespie Cnty.*, 554 U.S. 191, 202 (2008) (explaining that adversarial proceedings begin when the "defendant is brought before a judicial officer, is informed of a formally lodged accusation, and has restrictions imposed on his liberty in aid of the prosecution"). Because Brevard's lineup identifications occurred before he was charged with two counts of first-degree robbery, the Appellate Division reasonably concluded he was not deprived of his right to counsel at that time. *See Brevard I*, 106 N.Y.S.3d at 624.

To the extent Brevard's claim relies on a state-law right to counsel, such claims do not provide a basis for federal habeas review. Federal courts have jurisdiction to review habeas claims "only on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Brevard cites numerous state court cases in the Petition, seemingly contending that he was deprived of his right to counsel under New York state law. *See* Dkt. 21 at 20-21.

State-law claims, independent of federal law claims, do not provide grounds for habeas review, making Brevard's state-law claims meritless. *See Estelle v.*

29

*McGuire*, 502 U.S. 62, 67-68 (1991).  And even on the merits, New York state law establishes that there is "no automatic entitlement to counsel at pre-accusatory, investigatory lineups," and "law enforcement authorities ordinarily are not required to notify counsel of an impending investigatory lineup absent a specific request to do so." *People v. Mitchell*, 2 N.Y.3d 272, 274 (2004) (footnotes omitted).[8]

### D.    *The Sufficiency of Evidence Claim*

Brevard argues the prosecution failed to present legally sufficient evidence to prove that "the shotgun was a loaded weapon from which a shot, readily capable of producing death or serious physical injury could be discharged, or that [Brevard] actually possessed any weapon."  Dkt. 21 at 23.  This claim fails both procedurally and on its merits.

Brevard's sufficiency of evidence claim is barred from habeas review because it is procedurally defaulted.[9]  Brevard asserted this claim in his second N.Y. Crim. Proc. Law § 440.10 motion, *see* Dkt. 25-14 at 38, 42, which the state court denied, *see* Dkt. 25-16 at 3.  Brevard did not seek leave to appeal that denial, *see* Dkt. 1 at 4, and

---

[8]    Brevard argues that his right to counsel had attached on a pending charge in the same county. Dkt. 20 at 21.  "[A] request for counsel at [a pre-accusatory, investigatory] lineup will cause the right to attach only when the police are or become aware that the suspect is actually represented by counsel in a pending case." *Mitchell*, 2 N.Y.3d at 275.  Nothing in the record, other than Brevard's own statement, establishes that the police were aware of Brevard's pending charge at the time of the lineup.

[9]    Brevard did not raise this claim on direct appeal but instead raised it in his second N.Y. Crim. Proc. Law § 440.10 motion. *See* Dkt. 25-14 at 38, 42.  Brevard never sought leave to appeal the denial of this his motion; therefore, this claim is also unexhausted, as Brevard acknowledges in his original petition. *See* Dkt. 1 at 4.

the statutory one-year period to appeal has since expired, *see* N.Y. Crim. Proc. Law

§ 460.30.

Moreover, where a petitioner has defaulted his federal claims in state

court, "federal habeas review of the claims is barred unless the [petitioner] can

demonstrate cause for the default and actual prejudice as a result of the alleged

violation of federal law, or demonstrate that failure to consider the claims will result in

a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Although Brevard acknowledges that this claim is unexhausted, he has not

demonstrated cause for the default or provided any evidence that failure to consider his

claim will result in actual prejudice or a miscarriage of justice.

And even if Brevard's claims were not procedurally defaulted, his claims

also substantively lack merit. Defendants in a criminal trial may be convicted only

upon proof establishing their guilt beyond a reasonable doubt. *See Jackson v. Virginia*,

443 U.S. 307, 309 (1979). When considering the merits of a sufficiency argument on

habeas review, "[a] federal court must look to state law to determine the elements of the

crime." *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000) (alteration in

original) (quoting *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999), *cert. denied*, 528

US. 1170 (2000)). A federal court "must consider whether, as a matter of federal law,

there was sufficient evidence for a jury to find that the prosecution proved the

substantive elements of the crime as defined by state law." *Einaugler v. Sup. Ct. of N.Y.*,

31

109 F.3d 836, 839 (2d Cir. 1997).  The reviewing court "must consider the evidence in the light most favorable to the prosecution and make all inferences in its favor." *Fama*, 235 F.3d at 811.  And where a state court has considered the merits of a sufficiency claim on direct appeal, "a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable." *Wilson v. Sellers*, 584 U.S. 122, 125 (2018) (stating that the Supreme Court has "affirmed this approach time and time again").  Accordingly, a "[p]etitioner bears a 'very heavy burden' in convincing a federal habeas court to grant a petition on the grounds of insufficient evidence." *Ponnapula v. Spitzer*, 297 F.3d 172, 179 (2d Cir. 2002) (quoting *Quirama v. Michele*, 983 F.2d 12, 14 (2d Cir. 1993)).

Considering the state-law elements of the crime, Brevard's insufficiency of the evidence claim is without merit.  Under New York law, a person is guilty of first-degree robbery when he forcibly steals property and, in the course of committing the crime, he "displays what appears to be a . . . firearm." N.Y. Penal Law § 160.15[4].  "[I]t is an affirmative defense that such . . . firearm was not a loaded weapon from which a shot, readily capable of producing death or other serious physical injury, could be discharged." *Id.*

First, Brevard argues that the evidence was insufficient to establish that he possessed a firearm during the robbery. *See* Dkt. 21 at 22-23.  Both victims testified at trial, however, that the robber displayed a double-barreled shotgun, about three-and-a-

32

half feet long. *See* Dkt. 25-22 at 29-32, 79, 94. From this evidence, a jury could have

reasonably concluded that the robber possessed a firearm during the robbery. *See*

*Johnson,* 378 F.3d at 242 (finding eyewitness testimony may be sufficient to support a

jury's conclusion that the defendant possessed a firearm).

At trial, Mr. Avila admitted he had previously testified in another

proceeding that the shotgun was one-and-a-half to two feet long. Dkt. 25-22 at 95-96.

That contradiction does not change the reasonableness of the jury's conclusion, and this

court cannot reassess the jury's determinations of witness credibility. *See* Coleman, 566

U.S. at 651 ("[I]t is the responsibility of the jury -- not the court -- to decide what

conclusions should be drawn from evidence admitted at trial." (internal citations

omitted)); *Marshall v. Lonberger,* 459 U.S. 422, 434 (1983) (noting that federal habeas

courts have "no license" to reassess witness credibility). Despite Avila's somewhat

contradictory testimony, sufficient evidence existed for a jury to find that Brevard

possessed a firearm during the robberies. *See Einaugler,* 109 F.3d at 839.

Second, Brevard argues that the evidence was insufficient to establish that

the firearm was a loaded weapon capable of producing death or serious injury. *See* Dkt.

21 at 22-23. His claim fails because the prosecution did not bear the burden of proof to

establish that fact. Rather, it was Brevard's burden to assert and prove the affirmative

defense that the firearm was *not,* in fact, loaded and capable of producing death or

serious injury. *See* N.Y. Penal Law § 160.15(4). Here, no firearm was recovered, *see* Dkt.

33

21 at 22, and there was no evidence in the record from which a jury could conclude that the firearm was "unloaded or inoperable." *See, e.g., Brown v. Walker*, 275 F. Supp. 2d 343, 352 (E.D.N.Y. 2003) ("The gun that witnesses testified to observing petitioner brandish was never recovered. Petitioner's attorney had no ground to argue that the firearm was unloaded or inoperable."). For each of these reasons, Brevard's insufficient evidence claim fails procedurally and on its merits.

E.   *State Evidence/Bolstering Claim*

Brevard argues the trial court erred by admitting Detective Johnston's testimony as to the photo-array and lineup identifications of Brevard in violation of state evidentiary law. *See* Dkt. 21 at 24-25.[10] This claim is not cognizable on habeas review because it does not allege a violation of federal constitutional rights but rather a violation of a state evidentiary rule. As stated above, state-law claims, independent of federal claims, do not provide grounds for federal habeas review. *See Estelle*, 502 U.S. at 67-68. This Court need not address the merits of Brevard's state-law bolstering claim because it is plainly outside our scope of review.

---

[10]   Brevard erroneously cited to a defunct state evidentiary rule, section 393-b of New York's Code of Criminal Procedure law, which was repealed in 1971 with the adoption of New York Criminal Procedure Law. Dkt. 21 at 24-25; Dkt. 24-1 at 55. Regardless, state-law claims provide no basis for federal habeas review.

34

F.    *Suggestive Lineup Claim*

Brevard argues that the lineup was "unnecessarily suggestive" in violation of the Fifth Amendment because Mohammed "had an opportunity to see [Brevard] in the holding cell before viewing the lineup." Dkt. 21 at 26.

This Court need not reach the merits of Brevard's suggestive lineup claim because it is procedurally barred.  Brevard raised this claim in his second N.Y. Crim. Proc. Law § 440.10 motion, *see* Dkt. 25-14 at 53-54, but not on direct appeal, *see* Dkt. 25-4; Dkt. 25-5.  The state court denied this claim, pursuant to N.Y. Crim. Proc. Law §§ 440.10(2)(c) and 440.10(3)(c), concluding that it should have been raised on direct appeal.  *See* Dkt. 25-16 at 3.  N.Y. Crim. Proc. Law § 440.10(2)(c) requires a court to deny a motion to vacate when a defendant unjustifiably failed to raise a record-based claim on direct appeal.  *See* N.Y. Crim. Proc. Law § 440.10(2)(c).

Although Brevard's suggestive lineup claim is grounded in federal law, it is barred from habeas review because the trial court denied it based on adequate and independent state-law grounds.  Federal courts "will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729.  The Supreme Court has applied this doctrine "in deciding whether federal district courts should address the claims of state prisoners in habeas

corpus actions." *Lee v. Kemna,* 534 U.S. 362, 375 (2002) (quoting *Coleman,* 501 U.S. at 729); *see also Cone v. Bell,* 556 U.S. 449, 465 (2009).

Courts in the Second Circuit have consistently recognized N.Y. Crim. Proc. Law § 440.10(2)(c) as providing adequate and independent state-law grounds that may bar habeas review. *See, e.g., Levine v. Comm'r of Corr. Servs.,* 44 F.3d 121, 126 (2d Cir. 1995); *Smith v. West,* 640 F. Supp. 2d 222, 231, 237-38 (W.D.N.Y. 2009). Here, the state court denied Brevard's second section 440.10 motion, reasonably holding that Brevard's suggestive lineup claim was record-based and therefore should have been raised on direct appeal. Dkt. 25-16 at 3.

## G.    Miranda *Violation Claim*

Brevard also argues that the lineup identification should have been suppressed because he was not read his *Miranda* rights until after the lineup was conducted. *See* Dkt. 21 at 28-29.[11] Brevard raised this claim on direct appeal in his *pro se* supplemental brief. *See* Dkt. 25-5 at 45. The Appellate Division rejected Brevard's *Miranda* claim on its merits, without discussion, along with the other claims in his *pro se* supplemental brief. *See Brevard I,* 106 N.Y.S.3d at 625.

---

[11]    Brevard raised this *Miranda* violation claim in his second N.Y. Crim. Proc. Law § 440.10 motion. *See* Dkt. 25-14 at 53-54. The state court denied this claim on the procedural ground that it should have been raised on direct appeal, pursuant to N.Y. Crim. Proc. Law §§ 440.10(2)(c) and 440.10(3)(c). *See* Dkt. 25-16 at 3. However, the state court was mistaken because Brevard did in fact raise this issue, albeit briefly, in his *pro se* supplemental brief on direct appeal. Dkt. 25-5 at 45 (citing *Miranda v. Arizona,* 384 U.S. 436 (1966), and arguing on appeal that "the People failed to show that the Appellant had been warned of or waived his constitutional rights to counsel"). Hence, I address this claim on its merits.

The Appellate Division's conclusion was reasonable because *Miranda* violations apply to statements made by the defendant, not identification evidence such as lineups.  "While a defendant has a constitutional right not to have a coerced statement used against him, a defendant does not have a constitutional right to receive *Miranda* warnings." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998).  "The remedy for a *Miranda* violation is the exclusion from evidence of any ensuing self-incriminating statements." *Neighbour v. Covert*, 68 F.3d 1508, 1510 (2d Cir. 1995) (per curiam), *cert. denied*, 516 U.S. 1174 (1996)).  The Supreme Court has held that pre-trial lineup identifications need not be suppressed due to a *Miranda* violation because the "compulsion of the accused to exhibit his physical characteristics" involves no compulsion of self-incriminating testimony.  *United States v. Wade*, 388 U.S. 218, 222-23 (1967); *cf. United States v. Patane*, 542 U.S. 630, 634, 643 (2004) (holding that nontestimonial physical evidence need not be suppressed under *Miranda* because it "does not implicate the Self-Incrimination Clause").

Brevard alleges, and the state does not dispute, that the lineup identification evidence was obtained before he was read his *Miranda* rights.  *See* Dkt. 21 at 28-29; Dkt. 24-1 at 60.  Nevertheless, a *Miranda* violation would not require the suppression of pre-trial lineup identification evidence.  *See Wade*, 388 U.S. at 222-23. Therefore, the Appellate Division reasonably rejected Brevard's *Miranda* violation claim as meritless, and this Court holds the same in denying Brevard's habeas petition.

## CONCLUSION

Brevard has failed to show any basis for relief under 28 U.S.C. § 2254. Accordingly, the Petition is denied. Additionally, I decline to issue a certificate of appealability because Brevard has not made a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253. Pursuant to 28 U.S.C. § 1915(a)(3), I certify that any appeal taken from this decision and order would not be taken in good faith.

The Clerk of the Court shall enter judgment accordingly and close this case. The Clerk shall also mail copies of this memorandum decision and the judgment to Brevard at his last known address.

SO ORDERED.

Dated:      New York, New York
            March 17, 2025

DENNY CHIN
United States Circuit Judge
Sitting by Designation